**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DEMETRIAS VINSON, | ) | Case No. 1:22-CV-00657-BMB |
| | ) | |
| Petitioner, | ) | JUDGE BRIDGET MEEHAN |
| | ) | BRENNAN |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL |
| RONALD ERDOS, Warden, | ) | ARMSTRONG |
| | ) | |
| Respondent. | ) | |
| | ) | **REPORT & RECOMMENDATION** |

## I.   INTRODUCTION

Petitioner, Demetrias Vinson ("Mr. Vinson"), seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). Mr. Vinson is serving a sentence of 99 years for 21 counts of attempted murder, kidnapping, aggravated robbery, aggravated burglary, intimidation, vandalism, and having weapons while under disability.

Mr. Vinson asserts three grounds for relief. Respondent, Warden Ronald Erdos ("Warden"), filed an answer/return of writ on May 5, 2023. (ECF No. 6). Mr. Vinson filed a traverse on August 7, 2023. (ECF No. 9). This matter was referred to me on February 15, 2023 under Local Rule 72.2 to prepare a report and recommendation on Mr. Vinson's petition. (*See* ECF non-document entry dated February 15, 2023). For the reasons set forth below, I recommend that Mr. Vinson's petition be DENIED. I further recommend that this Court not grant Mr. Vinson a certificate of appealability.

## II.   RELEVANT FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings of fact are presumed correct and can be contravened only if the habeas petitioner shows, by

clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C.

§ 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d

524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by

a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio

Court of Appeals for the Eighth District summarized the facts as follows:

{¶ 2} On February 25, 2015 a Cuyahoga County Grand Jury indicted Vinson and juvenile codefendant Kain Vaughn (collectively, the "defendants") in a 53–count indictment. The indictment included 49 counts against Vinson relating to five armed robberies and an attempted murder committed over a 12–day period from October 10 to October 22, 2014, in Cleveland.

{¶ 3} On October 10, 2014, Vinson was part of an armed home invasion, robbing a woman at home with her two young children.

{¶ 4} On October 17, 2014, Vinson robbed City Cell, a mobile phone store. Vinson pointed a gun at the store owner and forced him to the ground, stealing his wallet and cell phone. Vinson also took $3,200 from the store's cash register, broke the store's telephone and ripped the phone cord from the wall. Vinson struck the store owner in the head with the gun and tied him up with his own belt.

{¶ 5} On the morning of October 19, 2014, Vinson and Vaughn, armed with handguns, robbed Tom's Food Mart. Later that afternoon, they robbed Franklin Food Mart. Each of these two robberies involved multiple victims. Vinson and Vaughn tried to conceal their identities by destroying the security cameras at the stores. In the Tom's Food Mart robbery, Vinson pulled a gun on the cashier while Vaughn forced a customer to the floor at gunpoint. During the Franklin Food Mart robbery, one of the victims had two cell phones and his wallet stolen and his head "stomped on" by the defendants. The defendants told another victim they knew where he lived and threatened to kill him if he identified them.

{¶ 6} On October 20, 2014, Vinson shot Isaiah Nunn five times in the driveway of a house on West 94th Street in Cleveland. As a result of the shooting, Nunn had to have one of his eyeballs surgically removed.

{¶ 7} On October 21, 2014, Vinson robbed a convenience store on Puritas Avenue at gunpoint. He and Vaughn were arrested following a foot chase by police on the following day. At the time of his arrest, Vinson was carrying a concealed Smith & Wesson .9 mm handgun.

{¶ 8} Vinson was indicted on charges relating to all six incidents; Vaughn was indicted for his involvement in two of the robberies. Vinson was 18 years old when the crimes were committed; Vaughn was 17.

(ECF No. 6-1, Exhibit 13; *State v. Vinson*, 73 N.E.3d 1025, 1030-31 (8th Dist. 2016)).

## III.  PROCEDURAL HISTORY

### A.  <u>State Court Conviction</u>

On February 26, 2015, Mr. Vinson was indicted in the Cuyahoga County Court of Common Pleas on 49 counts, including: (1) fifteen first-degree felony counts of aggravated robbery in violation of R.C. § 2911.01(A)(1); (2) nine second-degree felony counts of felonious assault in violation of R.C. §§ 2903.11(A)(1) and/or 2903.11(A)(2); (3) twelve first-degree felony counts of kidnapping in violation of R.C. §§ 2905.01(A)(2) and/or 2905.01(A)(3); (4) two third-degree felony counts of intimidation of a crime victim or witness in violation of R.C. § 2921.04(B)(1); (5) one fifth-degree felony count of vandalism in violation of R.C. § 2909.05(B)(1)(b); (6) two fourth-degree felony counts of carrying a concealed weapon in violation of R.C. § 2923.12(A)(2); (7) one first-degree felony count of aggravated burglary in violation of R.C. § 2911.11(A)(2); (8) one first-degree felony count of attempted murder in violation of R.C. §§ 2923.02 and 2903.02(A); and (9) six third-degree felony counts of having weapons under disability in violation of R.C. § 2923.13(A)(1). (ECF No. 6-1, Exhibit 1). Many of the counts also carried one-year and/or three-year firearm specifications. *Id*. On March 2, 2015, Mr. Vinson pled not guilty to all charges. (ECF No. 6-1, Exhibit 2).

On June 17, 2015, Mr. Vinson pled guilty to 21 felony counts, including three counts of aggravated robbery with three-year firearm specifications; four counts of aggravated robbery with one-year firearm specifications; one count of aggravated robbery with no firearm specification; two counts of kidnapping with three-year firearm specifications; two counts of kidnapping without a firearm specification; one count of aggravated burglary with a three-year firearm specification; one count of attempted murder with a three-year firearm

3

specification; two counts of intimidation of a crime victim or witness with one-year firearm specifications; one count of vandalism; and four counts of having weapons while under disability. (ECF No. 6-1, Exhibit 4). The remaining counts were nolled. *Id.* The trial court referred Mr. Vinson to the court psychiatric clinic for an examination in connection with his plea. (ECF No. 6-1, Exhibit 3).

On July 22, 2015, the trial court conducted a sentencing hearing. (ECF No. 6-1, Exhibit 5). As the Eighth Appellate District summarized, the trial court sentenced Mr. Vinson as follows:

Count 2: Aggravated robbery—11 years; consecutive to any other sentence

Three-year firearm specification—3 years; consecutive to any other sentence

Count 6: Aggravated robbery—Merged into Count 2

Three-year firearm specification—Merged into Count 2

Count 9: Kidnapping—11 years; consecutive to any other sentence

Count 11: Aggravated robbery—11 years; consecutive to any other sentence

One-year firearm specification—1 year; consecutive to any other sentence

Count 12: Aggravated robbery—11 years; concurrent to Count 11

One-year firearm specification—1 year; concurrent to Count 11

Count 17: Intimidation of crime victim or witness—36 months; consecutive to any other sentence

One-year firearm specification—1 year; consecutive to any other sentence

Count 18: Intimidation of crime victim or witness—36 months; concurrent to Count 17

One-year firearm specification—1 year; concurrent to Count 17

Count 19: Vandalism—12 months; consecutive to any other sentence

Count 21: Having weapons while under disability—36 months

4

Count 23: Aggravated burglary—11 years; consecutive to any other sentence

    Three-year firearm specification—3 years; consecutive to any other sentence

Count 25: Kidnapping—Merged into Count 23

    Three-year firearm specification—Merged into Count 23

Count 29: Aggravated robbery—11 years; consecutive to any other sentence

    Three-year firearm specification—3 years; consecutive to any other sentence

Count 32: Having weapons while under disability—36 months; concurrent to Count 29

Count 33: Attempted murder—11 years; consecutive to any other sentence

    Three-year firearm specification—3 years; consecutive to any other sentence

Count 39: Kidnapping—Merged into Count 33

    Three-year firearm specification—Merged into Count 33

Count 42: Aggravated robbery—11 years

Count 43: Aggravated robbery—11 years; concurrent to Count 44

    One-year firearm specification—1 year

Count 44: Aggravated robbery—11 years; concurrent to Count 43

    One-year firearm specification—1 year

Count 45: Kidnapping—Merged into Count 44

Count 48: Having weapons while under disability—36 months; concurrent to any other sentence

Count 53: Having weapons while under disability—36 months; concurrent to any other sentence

(ECF No. 6-1, Exhibit 13, ¶ 15; *Vinson*, 73 N.E.3d at 1032-33). In total, the trial court

sentenced Mr. Vinson to an aggregate sentence of approximately 99 years.[1]

---

[1] As the Eighth Appellate District noted, there was some uncertainty regarding the total sentence the trial judge imposed. The trial court informed Mr. Vinson that he had been sentenced to a total of 95 years, while the Eighth Appellate District calculated that Mr. Vinson's total sentence was 99 years. (ECF No. 6-1, Exhibit 13, ¶ 16; *Vinson*, 73 N.E.3d at 1034).

**B.  <u>Direct Appeal</u>**

On August 4, 2015, Mr. Vinson, through counsel, timely filed a notice of appeal to the Eighth Appellate District. (ECF No. 6-1, Exhibit 6). On November 23, 2015, Mr. Vinson filed a motion to remand the case to the trial court so that he could file a motion to vacate his guilty plea, which the Eighth Appellate District granted on December 8, 2015. (ECF No. 6-1, Exhibits 7-8). On March 10, 2016, the trial court denied Mr. Vinson's motion to vacate his guilty plea. (ECF No. 6-1, Exhibit 21).

On April 22, 2016, Mr. Vinson filed his appellate brief, raising the following assignments of error:

1. The 90-year sentence Mr. Vinson received is contrary to law and violates the Eighth Amendment because it imposes on a teenager a term of years that precludes any possibility of release during his life expectancy.

2. Mr. Vinson's guilty plea is invalid because he did not enter it knowingly, intelligently, and voluntarily.

3. Mr. Vinson received ineffective assistance of counsel in connection with his guilty plea.

4. The trial court abused its discretion by failing to allow the appellant to withdraw his guilty plea where the evidence submitted in support of the motion established a manifest injustice.

(ECF No. 6-1, Exhibit 11).

On November 3, 2016, the Eighth Appellate District affirmed Mr. Vinson's convictions but vacated his sentence. (ECF No. 6-1, Exhibit 13). The Eighth Appellate District overruled each of Mr. Vinson's assignments of error on the merits. However, it *sua sponte* held that the trial court erred because the trial court imposed consecutive sentences without making the requisite findings on the record pursuant to R.C. § 2929.14(C)(4).

On December 19, 2016, Mr. Vinson, through counsel, filed a notice of appeal to the Ohio Supreme Court from the unfavorable portions of the Eighth Appellate District's

decision. (ECF No. 6-1, Exhibit 14). In his memorandum in support of jurisdiction, Mr. Vinson raised the following propositions of law:

1. Imposing a sentence on an 18-year-old offender that well-exceeds his life expectancy where the underlying offenses did not involve murder, is unconstitutionally excessive and disproportionate to the seriousness of the misconduct.

2. A guilty plea is not entered knowingly and intelligently in accordance with constitutional principles if the defendant is not given accurate information about his realistic sentencing exposure.

3. Counsel provides ineffective legal representation where he fails to accurately apprise the defendant of his realistic sentencing exposure and fails to present available mitigation at sentencing.

(ECF No. 6-1, Exhibit 15). On July 26, 2017, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (ECF No. 6-1, Exhibit 17).

**C.  Resentencing and Appeal**

In September 2017, the trial court held additional sentencing hearings in accordance with the Eighth Appellate District's ruling. (ECF No. 6-1, Exhibit 23). On October 18, 2017, the trial court again imposed a 99-year sentence on Mr. Vinson, finding on the record that consecutive sentences were appropriate under R.C. § 2929.12(C)(4). *Id*.

On June 11, 2018, Mr. Vinson, through counsel, filed a notice of appeal. (ECF No. 6-1, Exhibit 24). Mr. Vinson also filed a motion for leave to file a delayed appeal, which the Eighth Appellate District granted on June 22, 2018. (ECF No. 6-1, Exhibits 25-26). In his appellate brief, Mr. Vinson raised the following assignment of error:

1. Mr. Vinson's sentence, a series of consecutive terms aggregating to 99-years, is contrary to law, was imposed in violation of his right to due process, and is excessive in violation of the US and Ohio constitutions.

(ECF No. 6-1, Exhibit 27).

On May 2, 2019, the Eighth Appellate District *sua sponte* stayed the appeal pending

the Ohio Supreme Court's decision in *State v. Gwynne*, 158 Ohio St. 3d 279 (2019), which resolved the question of which Ohio statutory provisions governed an appellate court's review of consecutive sentences. (ECF No. 6-1, Exhibit 29).

On March 12, 2020, the Eighth Appellate District affirmed Mr. Vinson's sentence, holding that "99 years for the conduct in this case is extreme; nevertheless, it is legal." (ECF No. 6-1, Exhibit 35, ¶ 2). One judge dissented, stating that Mr. Vinson's conduct was "serious, reprehensible, and brutal," but did not merit what was effectively a life sentence. *Id.* at ¶ 31. On March 23, 2020, Mr. Vinson filed a motion for reconsideration and for *en banc* review. (ECF No. 6-1, Exhibit 36).  On September 3, 2020, the Eighth Appellate District denied Mr. Vinson's motion for reconsideration, with one judge dissenting. (ECF No. 6-1, Exhibit 37). The court also denied Mr. Vinson's motion for *en banc* review. (ECF No. 6-1, Exhibit 38).

On November 5, 2020, Mr. Vinson, through counsel, filed a notice of appeal to the Ohio Supreme Court. (ECF No. 6-1, Exhibit 39). In his memorandum in support of jurisdiction, Mr. Vinson raised the following propositions of law:

1. When determining whether the record clearly and convincingly supports the trial court's imposition of consecutive sentences, the reviewing court must consider the total length of the sentence imposed.

2. An "extreme" 99-year prison sentence is clearly and convincing disproportionate to the seriousness of an 18-year-old's conduct, following his guilty plea to engaging in a two week crime spree that did not result in anyone's death. It is also disproportionate to the danger he poses to the public.

(ECF No. 6-1, Exhibit 40). On January 22, 2021, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (ECF No. 6-1, Exhibit 42).

**D.  Federal Habeas Action**

On April 22, 2022, Mr. Vinson, through counsel, filed his 28 U.S.C. § 2254 habeas petition. (ECF No. 1). Mr. Vinson's habeas petition raises three grounds for relief:

8

1. A guilty plea entered without accurate information about sentencing exposure is not a knowing, intelligent, or voluntary plea and thereby violates the Fifth and Fourteenth Amendment right to due process.

2. Imposing a sentence on an 18-year-old offender that well-exceeds his life expectancy where the underlying offenses did not involve murder is excessive and violates the Constitution's 8th Amendment.

3. Counsel is ineffective in violation of the Constitution's 6th Amendment where he fails to accurately advise the defendant of his sentencing exposure and fails to investigate and present available mitigation.

*Id*. The Warden filed an answer/return of writ on May 5, 2023. (ECF No. 6). Mr. Vinson filed a traverse on August 7, 2023. (ECF No. 9).

## IV. STANDARDS OF REVIEW AND GOVERNING LAW

### A.  Jurisdiction

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The Cuyahoga County Court of Common Pleas sentenced Mr. Vinson, and the Court takes judicial notice that Cuyahoga County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Mr. Vinson's § 2254 petition.

### B.  Exhaustion and Procedural Default

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional

issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). A claim is fairly presented when it has been asserted as a federal constitutional issue at every stage of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

If a procedural default has occurred, the default can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2)

10

"failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

### C.  <u>Cognizable Federal Claim</u>

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Glaze v. Morgan,* No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18, 2022) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quotation omitted). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).

**D.  <u>AEDPA Standard of Review</u>**

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act,

Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(*Id.*)

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the

12

unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous—it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree

that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## V.  ANALYSIS

### A.  Ground One: Voluntariness of Guilty Plea

In his first ground for relief, Mr. Vinson argues that his guilty plea was involuntary in violation of his Fifth and Fourteenth Amendment rights because the trial court did not provide him with accurate information regarding the maximum aggregate sentence that he faced on all of the charges to which he was pleading guilty. I conclude that Mr. Vinson's argument is without merit.

"A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). The validity of the plea must be determined from the "totality of the circumstances." *Abdus-Samad v. Bell*, 420 F.3d 614, 631 (6th Cir. 2005) (citing *Brady*, 397 U.S. 747).

When a defendant enters into a guilty plea, the record must affirmatively show that the plea was voluntary and intelligent. *See Boykin v. Alabama*, 395 U.S. 238, 242 (1969). When a habeas petitioner challenges the validity of his plea, "the state generally satisfies its burden [to show that the plea was voluntary and intelligent] by producing a transcript of the state court proceeding," *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). The state court's factual finding that the plea was proper is accorded a presumption of correctness

14

unless the transcript is inadequate to show that the plea was voluntary and intelligent. *Id*. at 326-327; *see* U.S.C. § 2254 (e)(1).

The Warden produced a transcript of the state court plea hearing, which shows that Mr. Vinson was advised of his rights and understood the rights he was giving up. (ECF No. 6-2, PageID # 738-39). The transcript also reflects that the trial court advised Mr. Vinson of the maximum sentence he faced on each count to which he was pleading guilty. *Id*. at PageID # 740-49. Mr. Vinson argues, however, that his plea was involuntary because the trial court did not advise Mr. Vinson of the maximum *aggregate* sentence that he faced on all counts and did not inform him that the court could impose consecutive sentences. Mr. Vinson avers that both he and his counsel were shocked when the trial court imposed a sentence of nearly 100 years. Mr. Vinson notes that the only time the question of an aggregate sentence came up during the plea hearing was when his counsel stated he had informed Mr. Vinson that he would receive a sentence of at least nine years. Mr. Vinson further asserts that he expected to receive a sentence of approximately 27 years, and that he would not have pled guilty if he knew the trial court might impose a 99-year sentence.

The Eighth Appellate District rejected Mr. Vinson's argument on the merits, holding as follows:

> {¶ 21} Thus, prior to accepting a guilty plea, a trial court must address the defendant "personally" and determine that the defendant is making the plea "voluntarily, with an understanding of the nature of the charges and the maximum penalty involved." Crim.R. 11(C)(2)(a). In considering whether a plea was entered knowingly, intelligently and voluntarily, "an appellate court examines the totality of the circumstances through a de novo review of the record." *State v. Spock*, 8th Dist. Cuyahoga No. 99950, 2014-Ohio-606, 2014 WL 688793, ¶ 7; *see also State v. Jackson*, 8th Dist. Cuyahoga No. 99985, 2014-Ohio-706, 2014 WL 802050, ¶ 6.

> {¶ 22} There is a distinction between constitutional rights and nonconstitutional rights when a defendant enters a guilty plea. As to the nonconstitutional aspects of Crim.R. 11(C)(2), which includes the defendant's right to be informed of the "maximum penalty involved," substantial compliance is required. *Veney*, 120 Ohio St.3d 176,

2008-Ohio-5200, 897 N.E.2d 621, at ¶ 14; *Jackson* at ¶ 9. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990).

{¶ 23} Vinson does not dispute that the trial court properly advised him as to the maximum penalties he could receive on each of the individual counts to which he would be pleading guilty. However, he contends that because the trial court "gave Vinson no reason to believe that it could or would impose consecutive sentences on most of the 21 counts involved" and only "mentioned consecutive terms" when it explained the mandatory consecutive prison sentences on the firearm specifications associated with certain of the counts, he could not have understood that the trial court could "impose anything close to an aggregate sentence of nearly 100 years" and that his guilty pleas should, therefore, be vacated. We disagree.

{¶ 24} Where the imposition of consecutive sentences is discretionary with the trial court, the Ohio Supreme Court has held that "[f]ailure to inform a defendant who pleads guilty to more than one offense that the court may order him to serve any sentences imposed consecutively, rather than concurrently, is not a violation of Crim.R. 11(C)(2), and does not render the plea involuntary." *State v. Johnson*, 40 Ohio St.3d 130, 134, 532 N.E.2d 1295 (1988), syllabus ("[T]he trial court * * * carried out the specific mandate of Crim.R. 11(C) by stating to the defendant the exact maximum sentence for each of the crimes as provided by law. There is no specific requirement in such rule that an explanation be made that any sentences as given may run consecutively * * *.").

{¶ 25} This court has consistently followed *Johnson* in concluding that Crim.R.11(C)(2)(a) does not require a trial court to advise a defendant of the potential for consecutive sentencing. *See, e.g., State v. Dansby–East*, 2016-Ohio-202, 57 N.E.3d 450, ¶ 16–17 (trial court was not required to advise defendant of the "cumulative total of all of the prison terms for all of the offenses at the time of the guilty plea"); *State v. Dotson*, 8th Dist. Cuyahoga No. 101911, 2015-Ohio-2392, 2015 WL 3819178, ¶ 12 (The Crim.R. 11(C)(2)(a) requirement of informing the defendant of the "maximum penalty" applies only to the " 'maximum penalty' for the crime for which 'the plea' is offered" and does not apply " 'cumulatively to the total of all sentences received for all charges which a criminal defendant may answer in a single proceeding.' "), quoting *Johnson* at 133, 532 N.E.2d 1295; *State v. Van Horn*, 8th Dist. Cuyahoga No. 98751, 2013-Ohio-1986, 2013 WL 2150709, ¶ 14 ("[T]he trial court was not required to tally all of the potential penalties for all of the offenses and apprise [defendant] of the cumulative total * * * before accepting the guilty plea. Further, the trial court was not required to inform [defendant] that the court may order him to serve any sentences imposed consecutively, rather than concurrently. Rather, in outlining all of the possible penalties for each of the charges * * *, the trial court substantially complied with its duty to notify him of the maximum penalty for each offense as required by Crim.R. 11(C), as it indicated the maximum penalty for each offense to which he pled guilty."); *State v. McKissic*, 8th Dist. Cuyahoga Nos. 92332 and 92333, 2010-Ohio-62, 2010 WL 117701, ¶ 16 (observing that "[t]his court has

16

consistently followed *Johnson* to find substantial compliance in cases where the trial court failed to advise a defendant prior to accepting a plea that sentences might be imposed consecutively").

{¶ 26} In this case, the trial judge reviewed each count individually with Vinson, explained to Vinson the range of penalties including the maximum prison term associated with each count and confirmed with Vinson that he understood the charges and potential penalties. Before she commenced the plea colloquy, the trial judge told Vinson, if at any time during the plea hearing she or counsel said anything that he did not understand, found confusing or with which he disagreed, he should let her know. Vinson agreed that he would do so. At no point during the plea hearing did Vinson indicate to the trial court that there was anything he did not understand, found confusing or with which he did not agree related to the charges against him or his potential sentences. Vinson's responses to the trial court's questions and the totality of the circumstances supports the conclusion that he subjectively understood the consequences of his guilty pleas. As such, the trial court substantially, if not fully, complied with its obligations under Crim.R. 11(C)(2)(a) to "[d]etermin[e] that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved." The trial court's failure to specifically state that prison terms on the offenses to which Vinson was pleading guilty could be run consecutively did not preclude the trial court's acceptance of his plea as having been knowingly, intelligently and voluntarily made.

(ECF No. 6-1, Exhibit 13; *Vinson*, 73 N.E.3d at 1036-37).

Applying AEDPA deference, the Eighth Appellate District did not act contrary to or unreasonably apply controlling law in holding that Mr. Vinson's plea was knowing and voluntary. As an initial matter, I must defer to the Eighth Appellate District's holding that Ohio law does not require that a defendant be informed of the maximum aggregate sentence that he is facing, but instead requires only that the defendant be informed of the maximum penalty on each individual charge. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

Nor has Mr. Vinson established that the trial court violated his clearly established rights under the Fifth and Fourteenth Amendments by failing to inform him of the maximum aggregate sentence that the court could impose. Mr. Vinson does not cite to any Supreme

Court cases holding that a court must advise a defendant of the maximum potential aggregate sentence, and at least one court within this district has rejected an identical argument. *See Bates v. Lazaroff*, No. 1:14CV0399, 2015 WL 3454739, at *1, 12 (N.D. Ohio May 29, 2015) (adopting magistrate judge's report and recommendation that "the Court find that no due process violation occurred when the trial court failed to specifically state the maximum penalty that [petitioner] faced in each case or the total aggregate sentence that he faced").

Mr. Vinson's assertion that he expected to receive a sentence of approximately 27 years, rather than the 99-year sentence he actually received, also does not demonstrate that his plea was involuntary. "Unfulfilled subjective expectations of counsel and a defendant regarding the possible length of sentence do not render an otherwise valid plea involuntary." *United States v. Ford*, 15 F. App'x 303, 308 (6th Cir. 2001). Courts within this circuit have thus repeatedly rejected arguments that a plea is involuntary because a defendant received a longer sentence than anticipated. *See e.g.*, *Lee v. United States*, No. 2:12-cv-327, 2013 WL 3724876, at *18 (S.D. Ohio Jul 15, 2013), *report and recommendation adopted*, 2013 WL 2090580 (S.D. Ohio May 19, 2014) (holding that plea was not involuntary despite counsel's inaccurate prediction regarding sentence length); *Janoskey v. Davis*, No. 05-10129, 2008 WL 2952036, at *7 (E.D. Mich. July 24, 2008) ("the fact that the petitioner was subsequently dissatisfied with her sentence or may have hoped for more lenient treatment does not render her plea unknowing or involuntary"); *Jones v. Yost*, No. 3:22-cv-352, 2024 WL 579748, at *12 (S.D. Ohio Feb. 13, 2024) (report and recommendation) ("A guilty plea is not rendered involuntary or constitutionally invalid just because the defendant receives a longer sentence than he expected."). Accordingly, I recommend that the Court deny Mr. Vinson's first ground for relief.

**B.  Ground Two: Eighth Amendment**

In his second ground for relief, Mr. Vinson asserts that a 99-year sentence for non-homicide crimes constitutes cruel and unusual punishment in violation of the Eighth Amendment. Mr. Vinson's argument has several components. First, he asserts that, because he was 18 years old when he committed the offenses at issue, his sentence, which effectively amounts to life without parole, is contrary to a series of Supreme Court cases prohibiting imposition of the death penalty or life without parole on juvenile offenders. Second, Mr. Vinson argues that, even if he is not entitled to rely on that line of cases, a 99-year prison sentence is disproportionate to the severity of his conduct and to the sentences that other similar offenders have received. Finally, Mr. Vinson argues that his sentence is unconstitutional in light of certain mitigation evidence that the Ohio courts failed to properly consider. I address each argument in turn.

The Eighth Amendment to the U.S. Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. Amend. VIII. The Eighth Amendment is applicable to the states through the Fourteenth Amendment. *See Roper v. Simmons*, 543 U.S. 551, 560 (2005) (citing cases). It "guarantees individuals the right not to be subjected to excessive sanctions." *Id*. (citing *Atkins v. Virginia*, 536 U.S. 304, 311 (2002)). That right "flows from the basic 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.'" *Id*. (quoting *Atkins*, 536 U.S. at 560); *see also Graham v. Florida*, 560 U.S. 48, 59 (2010) ("The concept of proportionality is central to the Eighth Amendment.").

In *Roper*, the Supreme Court held that the Eighth Amendment bars imposition of the death penalty on offenders who are under the age of 18 when they commit their crimes. *Id*. at 570-71. The Court based its holding on its conclusion that "[t]hree general differences

between juveniles under 18 and adults demonstrate that juvenile offenders cannot with reliability be classified among the worst offenders." *Id*. at 569. Those three differences are: (1) a lack of maturity and underdeveloped sense of responsibility; (2) an increased susceptibility to negative influences and peer pressure; and (3) the fact that the character of a juvenile is not as formed as that of an adult. *Id*. at 569-70.

In *Graham*, the Supreme Court held that the differences between juvenile and adult offenders mandate a different treatment of juvenile offenders not just in the death penalty context, but also in the context of sentences of life without parole for nonhomicide offenses. 560 U.S. at 74. The Court stated that, "when compared to an adult murderer, a juvenile offender who did not kill or intend to kill has a twice diminished moral culpability. The age of the offender and the nature of the crime each bear on the analysis." *Id*. at 69. The Court noted that life without parole "is an especially harsh punishment for a juvenile," who "will on average serve more years and a greater percentage of his life in prison than an adult offender." *Id*. at 70. The Court also concluded that none of the traditional bases for punishment—retribution, deterrence, incapacitation, or rehabilitation—justified imposition of life without parole for juvenile nonhomicide offenders. *Id*. at 71-74. Accordingly, "for a juvenile offender who did not commit homicide the Eighth Amendment forbids the sentence of life without parole." *Id*. In *Miller v. Alabama*, 567 U.S. 460 (2012), the Court extended *Graham* to sentences of life without profile for juvenile homicide offenders, holding that a state may not mandate life without parole on juvenile homicide offenders, but must instead make an individualized determination that a sentence of life without parole is warranted. *Id*. at 479-80.

Mr. Vinson argues that his 99-year sentence for nonhomicide offenses he committed

when he was 18 years old violates the rules set forth in *Roper*, *Graham*, and *Miller* because it is effectively a life sentence without the possibility of parole imposed upon a teenage offender. Mr. Vinson's argument fails for at least two separate reasons.

First, as the Eighth Appellate District correctly held, Mr. Vinson was 18 at the time that he committed the offenses to which he pled guilty, while *Miller* and *Graham* expressly apply only to juvenile offenders. (ECF No. 6-1, Exhibit 13, ¶ 51; *Vinson*, 73 N.E. 3d at 1042-43). As the Court stated in *Roper*:

> Drawing the line at 18 years of age is subject, of course, to the objections always raised against categorical rules. The qualities that distinguish juveniles from adults do not disappear when an individual turns 18. By the same token, some under 18 have already attained a level of maturity some adults will never reach. For the reasons we have discussed, however, a line must be drawn. The plurality opinion in *Thompson* drew the line at 16. In the intervening years the *Thompson* plurality's conclusion that offenders under 16 may not be executed has not been challenged. The logic of *Thompson* extends to those who are under 18. The age of 18 is the point where society draws the line for many purposes between childhood and adulthood. It is, we conclude, the age at which the line for death eligibility ought to rest.

543 U.S. at 574. The Court reiterated the bright-line nature of the rule in *Graham*, holding that, "[b]ecause '[t]he age of 18 is the point where society draws the line for many purposes between childhood and adulthood,' those who were below that age when the offense was committed may not be sentenced to life without parole for a nonhomicide crime." 560 U.S. at 74-75 (quoting *Roper*, 543 U.S. at 574). The Sixth Circuit has similarly emphasized that *Roper*, *Graham*, and *Miller* adopted categorical rules that apply only to offenders who were under the age of 18 when they committed their offenses. *See United States v. Marshall*, 736 F.3d 492, 498 (6th Cir. 2013) ("the reasons for according special protections to offenders under 18 cannot be used to extend those same protections to offenders over 18"); *In re Garner*, 612 F.3d 533, 535 (6th Cir. 2010) (rejecting argument that *Roper* prohibited imposition of death sentence on individual with mental age below 18 and stating, "the *Roper*

Court clearly held that a sentence of death may not be imposed upon an offender with a *chronological* age of less than 18").

Mr. Vinson acknowledges that, "on their face," *Roper*, *Miller,* and *Graham* apply to individuals under 18 at the time of their offenses. (ECF No. 1-1, PageID # 25-26). He argues, however, that "the research that drove the reasoning in those cases clearly applies to young people up into their early 20's." *Id*. at PageID # 26. Even assuming it is logical to extend *Miller* and *Graham* to young offenders over the age of 18, however, AEDPA precludes me doing so when the Supreme Court has not. *See Nitsche v. Erdos*, No. 1:17-cv-1037, 2019 WL 5300202, at *21 (N.D. Ohio July 26, 2019), *report and recommendation adopted*, 2019 WL 5294946 (N.D. Ohio Oct. 18, 2019) ("Nitsche is essentially asking us . . . to extend *Miller* to a person over 18. We have no basis upon which to do so."). Accordingly, *Miller* and *Graham* do not apply to Mr. Vinson, and his sentence does not violate the Eighth Amendment on that basis.

Even if Mr. Vinson had been a juvenile at the time he committed the offenses, however, his sentence does not violate clearly established Supreme Court precedent because, unlike the defendants in *Miller* and *Graham*, he did not receive a sentence of life without parole. Rather, Mr. Vinson was sentenced to a fixed term of 99 years. While Mr. Vinson correctly argues that it is extremely unlikely that his sentence will expire during his natural life, the Supreme Court has never extended *Miller* or *Graham* to fixed-term sentences that effectively amount to life without parole.

That distinction is again dispositive. As the Sixth Circuit held in *Bunch v. Smith*, 685 F.3d 546 (6th Cir. 2012), *Graham* "did not clearly establish that consecutive, fixed-term sentences for juveniles who commit multiple nonhomicide offenses are unconstitutional when

they amount to the practical equivalent of life without parole." *Id*. at 550; *see also Starks v. Easterling*, 659 F. App'x 277, 280-81 (6th Cir. 2016) ("Because the Supreme Court has not yet explicitly held that the Eighth Amendment extends to juvenile sentences that are the functional equivalent of life, and given the fact that lower courts are divided about the scope of *Miller*, we hold that the Tennessee courts' decisions were not contrary to, or an unreasonable application of, clearly established federal law as defined by the Supreme Court."); *Atkins v. Crowell*, 945 F.3d 476, 478 (6th Cir. 2019) ("the state court's holding—that a chance for release after 51 years removes Atkins's sentence from *Miller's* orbit—was neither 'contrary to' nor an 'unreasonable application' of *Miller*").

Nor can Mr. Vinson establish that, irrespective of *Miller* and *Graham*, habeas relief is warranted because his sentence was disproportionate to the seriousness of the offenses or the sentences that other, similarly situated defendants received. The Eighth Amendment does not contain a general "guarantee against disproportionate sentences." *Harmelin v. Michigan*, 501 U.S. 957, 985 (1991)). Rather, as the Supreme Court held in *Lockyer*, "[t]hrough [the] thicket of Eighth Amendment jurisprudence, one governing legal principle emerges as 'clearly established' under § 2254(d)(1): A gross disproportionality principle is applicable to sentences for terms of years." 538 U.S. at 72. Even with respect to the "gross disproportionality" principle, however, the "precise contours" are "unclear," and it is "applicable only in the 'exceedingly rare' and 'extreme' case." *Id*. at 73.

The Eighth Appellate District rejected Mr. Vinson's proportionality argument on the merits, holding as follows:

{¶ 54} Furthermore, "it is not the aggregate term of incarceration but, rather, the individual sentences that are relevant for purposes of Eighth Amendment analysis." *State v. Hairston*, 118 Ohio St.3d 289, 2008-Ohio-2338, 888 N.E.2d 1073, ¶ 22 (aggregate prison term of 134 years, which resulted from the consecutive imposition

of the individual sentences did not violate the Eighth Amendment to the United States Constitution or Section 9, Article I of the Ohio Constitution). The Ohio Supreme Court analyzes cruel and unusual disproportionality claims arising from a lengthy aggregate term of consecutive sentences based on the individual sentences imposed on each count and not the "cumulative impact of multiple sentences imposed consecutively." *Hairston* at ¶ 20. "Where none of the individual sentences imposed on an offender are grossly disproportionate to their respective offenses, an aggregate prison term resulting from consecutive imposition of those sentences does not constitute cruel and unusual punishment." *Id.*; *State v. Flagg*, 8th Dist. Cuyahoga No. 95958, 2011-Ohio-5386, 2011 WL 4978922, ¶ 15.

{¶ 55} Trial courts have discretion to impose a prison sentence within the statutory range for each offense. *Hairston* at ¶ 21, citing *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, paragraph seven of the syllabus. Therefore, " '[a]s a general rule, a sentence that falls within the terms of a valid statute cannot amount to a cruel and unusual punishment.' " *Hairston* at ¶ 21, quoting *McDougle v. Maxwell*, 1 Ohio St.2d 68, 69, 203 N.E.2d 334 (1964). Vinson does not claim that his sentence on any count is disproportionate to the offense and has not challenged the trial court's imposition of consecutive sentences. If his individual sentences are not "grossly disproportionate," his aggregate sentence cannot be "grossly disproportionate" simply because the individual sentences are run consecutively. *Hairston* at ¶ 20–22.

{¶ 56} In this case, Vinson committed a crime spree consisting of five armed robberies, involving multiple victims, and an attempted murder of a man he shot five times. Vinson threatened and terrorized his victims, ultimately pleading guilty to 21 felonies, including attempted murder, aggravated robbery, aggravated burglary and kidnapping. There is no dispute that each of Vinson's individual prison sentences are within the applicable statutory range for the offense. His individual sentences are not "grossly disproportionate" to the crimes or "shocking to a reasonable person or to the community's sense of justice" and, therefore, do not violate the Eighth Amendment's prohibition against cruel and unusual punishment. *Hairston* at ¶ 22; *see also State v. Williams*, 8th Dist. Cuyahoga Nos. 103363 and 10336, 2016-Ohio-3456, 2016 WL 3348537, ¶ 6 (A sentence does not violate the Eighth Amendment's prohibition against cruel and unusual punishment if the trial court sentences the defendant on each offense within the applicable statutory range for the degree of felony charged.). Accordingly, Vinson's aggregate prison sentence is not cruel and unusual punishment under the Eighth Amendment.

(ECF No. 6-1, Exhibit 13; *Vinson*, 73 N.E. 3d at 1044-45).

The Eighth Appellate District's holding that the Eighth Amendment analysis must be applied to each individual sentence, rather than to the aggregate total sentence, was not contrary to or an unreasonable application of controlling law. To the contrary, "the notion that gross disproportionality is to be applied to each offense, rather than cumulative sentences

24

for different crimes, is plainly a reasonable application of the Supreme Court precedent." *Hand v. Turner*, No. 3:19-cv-049, 2019 WL 699357, at \*5 (S.D. Ohio Feb. 20, 2019), *report and recommendation adopted*, 2019 WL 1994496 (S.D. Ohio May 6, 2019). The Eighth Appellate District's holding that Mr. Vinson's sentence was not grossly disproportionate to the severity of his two-week crime spree, which, among other things, cost one victim his eye, is also not contrary to or a misapplication of controlling law. Similarly, the fact that Mr. Vinson allegedly received a significantly longer sentence than other similarly situated offenders does not rise to the level of an Eighth Amendment violation. *See Pulley v. Harris*, 465 U.S. 37, 43-44 (1984) (holding that Eighth Amendment does not require state court to compare death sentence imposed on offender to sentences imposed in other similar cases); *Getsy v. Mitchell*, 495 F.3d 295, 306 (6th Cir. 2007) (noting that, even in death penalty cases, comparative proportionality review is not required); *Buell v. Mitchell*, 274 F.3d 337, 368 (6th Cir. 2001) (same).

Finally, Mr. Vinson argues that his sentence is grossly disproportionate because the trial court and the Eighth Appellate District failed to properly consider a number of mitigation factors, including: (1) Mr. Vinson's childhood abuse and neglect; (2) the sudden death of his mother when he was 13; (3) his brother's suicide; and (4); his compromised mental health. However, Mr. Vinson does not cite to any authority—much less clearly established Supreme Court precedent—establishing that a non-capital defendant's Eighth Amendment rights are violated where a state court fails to properly weigh mitigation evidence, and the Sixth Circuit has held to the contrary. *See Engle v. United States*, 26 F. App'x 394, 397 (6th Cir. 2001) ("The Eighth Amendment does not require consideration of mitigating factors at sentencing in non-capital cases").

25

In sum, I recommend that the Court deny Mr. Vinson's second ground for relief because Mr. Vinson has not established that his sentence violates the Eighth Amendment's prohibition on sentences of life without parole for juvenile offenders and also has not established that his sentence is grossly disproportionate to the offenses he committed.

**C.  Ground Three: Ineffective Assistance of Counsel**

In his third and final ground for relief, Mr. Vinson argues that he received the ineffective assistance of trial counsel during the plea phase in violation of his rights under the Sixth and Fourteenth Amendments. I again conclude that Mr. Vinson's arguments are without merit.

A petitioner claiming ineffective assistance of counsel must show that: (1) counsel's representation "fell below an objective standard of reasonableness," such that he was not performing as counsel guaranteed under the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Under the first prong, the petitioner must overcome the "strong[] presum[ption that counsel] rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. For prejudice, the petitioner must show that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The *Strickland* standard is "extremely deferential" because "'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Kelly*, 846 F.3d at 829 (6th Cir. 2017) (quoting *Strickland*, 466 U.S. at 690). "[T]he goal is not to ensure that a criminal defendant be afforded perfect counsel, but rather 'to ensure that the adversarial testing process works to produce a just result under the standards governing decision." *Id*. (quoting *Strickland*, 466

U.S. at 687).

Mr. Vinson argues that his trial counsel was ineffective in two respects: (1) failing to properly advise Mr. Vinson regarding his true sentencing exposure; and (2) failing to adequately present mitigation evidence at Mr. Vinson's sentencing hearing. I will address each in turn.

### 1. Failure to Properly Advise Mr. Vinson Regarding his Sentencing Exposure

*Strickland* applies at the guilty plea stage. Indeed, the Supreme Court has held that, "[b]efore deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'" *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). To prevail on a *Strickland* claim in the guilty plea context, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

"In the Sixth Circuit, a petitioner 'cannot make that showing merely by telling [the court] now that she would have gone to trial then if she had gotten different advice.'" *Shimel v. Warren*, 838 F.3d 685, 698 (6th Cir. 2016) (quoting *Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012)). Instead, the petitioner must demonstrate that "'a decision to reject the plea bargain would have been rational under the circumstances.'" *Id.* (quoting *Padilla*, 559 U.S. at 372). The test is an objective one, made "without regard for the idiosyncrasies of the particular decisionmaker." *Hill*, 472 U.S. at 59-60 (quotations omitted). "The rationality of such a rejection is typically based on multiple factors, including the strength of the evidence against a defendant, the lack of viable defenses, and the benefits of the plea bargain." *Plumaj v. Booker*, 629 F. App'x 662, 667 (6th Cir. 2015) (citing *Pilla*, 668 F.3d at 373).

Mr. Vinson argues that his trial counsel was ineffective because counsel provided

27

misinformation regarding Mr. Vinson's maximum sentencing exposure. In particular, Mr. Vinson asserts that his trial counsel informed him that he would probably receive a sentence of approximately 27 years and did not inform Mr. Vinson that he could receive a sentence of nearly 100 years. Mr. Vinson argues that his trial counsel's prediction was "not just mistaken, [but] grossly so." (ECF No. 1-1, PageID # 32).

Mr. Vinson raised the same argument before the Eighth Appellate District, which rejected it on the merits. Where, a state court reaches the merits of an ineffective assistance of counsel claim, federal habeas courts provide an additional layer of AEDPA deference to that adjudication under § 2254(d). *See Perkins v. McKee,* 411 F. App'x 822, 828 (6th Cir. 2011). The Sixth Circuit has emphasized the double layer of deference that federal courts must give state courts in reviewing federal ineffective assistance of counsel claims under AEDPA:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. … An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. … Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id*. (quoting *Harrington,* 131 S.Ct. 770, 786-88).

In rejecting Mr. Vinson's claim that his counsel was ineffective in failing to properly advise him regarding his potential maximum sentence, the Eighth Appellate District held as follows:

> {¶ 31} Vinson claims that his trial counsel was ineffective for advising him that he believed the trial court would sentence Vinson to "about 27 years" in prison if he

accepted the plea deal offered by the state. Vinson claims that, as a result of this "inaccurate information," he was unable to "objectively or subjectively understand the consequences of [his] plea" and that if trial counsel had "accurately advised" him that his guilty pleas "could or would result in a more than life sentence," he would not have entered his guilty pleas.

{¶ 32} An attorney's mere inaccurate prediction of a defendant's sentence does not constitute ineffective assistance of counsel:

> A good faith but erroneous prediction of sentence by defense counsel does not render the plea involuntary. Where the representations made by defense counsel were hopeful, good faith estimates, not promises, the fact that defendant may have had expectations of leniency is not sufficient, absent evidence that the government induced such expectation, to justify withdrawal of the plea.

*State v. Salley*, 10th Dist. Franklin No. 80AP–850, 1981 WL 3250, *4 (June 11, 1981); *see also State v. Longo*, 4 Ohio App.3d 136, 139–140, 446 N.E.2d 1145 (8th Dist.1982) (counsel's error in "predict[ing] a sentencing result based on an educated judgment" that "did not pan out" did not render his assistance ineffective); *State v. Mays*, 174 Ohio App.3d 681, 2008-Ohio-128, 884 N.E.2d 607, ¶ 10 (8th Dist.) ("A lawyer's mistaken prediction about the likelihood of a particular outcome after correctly advising the client of the legal possibilities is insufficient to demonstrate ineffective assistance of counsel."), *State v. McMichael*, 10th Dist. Franklin Nos. 11AP–1042, 11AP–1043 and 11AP–1044, 2012-Ohio-3166, 2012 WL 2859928, ¶ 31 (counsel's " 'mere inaccurate prediction of a sentence does not demonstrate the deficiency component of an ineffective assistance of counsel claim' "), quoting *State v. Glass*, 10th Dist. Franklin No. 04AP–967, 2006-Ohio-229, 2006 WL 164419, ¶ 34.

{¶ 33} In this case, the record reflects that trial counsel did nothing more than provide Vinson a good faith estimate or "educated guess" as to what his aggregate sentence might be in light of the relevant facts and circumstances. The record is clear that trial counsel made no promises to Vinson regarding the length of the sentence he would receive upon the entry of his guilty pleas. Trial counsel expressly stated at the sentencing hearing that he could not advise Vinson what his aggregate prison sentence might be other than to state that it would be at least nine years due to the mandatory consecutive sentences associated with the firearm specifications to which he would be pleading guilty. Vinson indicated that he was satisfied with his trial counsel's representation and expressly acknowledged at the sentencing hearing that no promises had been made to him to induce him to change his pleas other than what had been stated on the record.

{¶ 34} Furthermore, Vinson has not established that he was prejudiced as a result of any misinformation he may have received from his trial counsel regarding his potential sentences. The trial court conducted a full Crim.R. 11 colloquy where it informed Vinson, prior to the entry of his guilty pleas, of the maximum possible sentence on each of the counts to which he was pleading guilty. Once he was informed by the trial court of the potential maximum sentences he could receive, he could have

decided not to change his pleas and asked to proceed to trial instead, but he did not.
*State v. Reed*, 8th Dist. Cuyahoga No. 91767, 2009-Ohio-2264, 2009 WL 1348207, ¶ 35.

(ECF No. 6-1, Exhibit 13; *Vinson*, 73 N.E.3d at 1038-39).

Applying the double layer of deference under AEDPA, the Eighth Appellate District did not err in rejecting Mr. Vinson's *Strickland* claim. To the contrary, courts have routinely rejected similar arguments, particularly where the trial court held an adequate plea hearing. *See Memminger v. Woods*, No. 14-2029, 2015 WL 13932014, at *2 (6th Cir. Sept. 30, 2015) ("even assuming that trial counsel performed deficiently by misadvising Memminger about what his sentence would be, Memminger cannot establish prejudice because he was expressly informed during the plea colloquy that there was no sentencing agreement and that his sentence would be determined by the trial court"); *Durrette v. Harris*, No. 1:19-CV-00268-JGC, 2020 WL 13830467, at *12-17 (N.D. Ohio Oct. 8, 2020) (report and recommendation) (holding that, even assuming trial counsel performed deficiently by incorrectly predicting length of sentence, petitioner could not show that ineffective performance caused him prejudice in light of plea colloquy); *Avila v. United States*, Nos. 2:06-cv-263; 2:06-cv-577, 2007 WL 869723, at *10 (S.D. Ohio Mar. 20, 2007) ("It has long been settled as a general rule that where an adequate guilty plea hearing has been conducted, an erroneous prediction or assurance by defense counsel regarding the likely sentence does not constitute grounds for invalidating a guilty plea on grounds of ineffective assistance of counsel.") (quoting *Brown v. United States*, 75 F. Supp. 2d 345, 355 (D.N.J. 1999)).

Here, the trial court expressly advised Mr. Vinson as to the maximum sentence he could receive on each count, and Mr. Vinson indicated that he understood the charges and the potential sentence on each charge. (ECF No. 6-2, PageID # 740-49). Mr. Vinson's trial counsel also stated that he had informed Mr. Vinson that he would receive a sentence of at

30

least nine years, but that counsel did not know what Mr. Vinson what his maximum sentence would be. *Id*. at PageID # 735. Mr. Vinson has not shown that counsel's prediction fell below an objective standard of reasonableness or that he was prejudiced by his counsel's prediction in light of the plea hearing. I therefore recommend that the Court deny this portion of Mr. Vinson's *Strickland* claim.

### 2. *Failure to Adequately Present Mitigation Evidence*

Mr. Vinson also argues that he received ineffective assistance of counsel because his trial counsel failed to adequately present mitigation evidence at sentencing. In particular, Mr. Vinson argues that his trial counsel should have presented evidence that he had compromised mental health, suffered from childhood abuse and negligent, and experienced the sudden death of his mother and the suicide of his brother when he was growing up.

A trial counsel's failure to conduct 'a reasonable investigation of a defendant's psychiatric history and family background and to present mitigating evidence . . . at sentencing[] can constitute ineffective assistance'—even where counsel believes further investigation would be futile or where presenting the evidence may open the door to unfavorable evidence." *Smith v. Crews*, 735 F. App'x 178, 186 (6th Cir. 2018) (quoting *Poindexter v. Mitchell*, 454 F.3d 564, 577-78 (6th Cir. 2006) (citing *Wiggins v. Smith*, 539 U.S. 510, 522-23 (2003)). "An investigation into mitigating evidence is unreasonable where defense counsel 'failed to act while potentially powerful mitigating evidence stared them in the face ... or would have been apparent from documents any reasonable attorney would have obtained.'" *Id*. (quoting *Bobby v. Van Hook*, 558 U.S. 4, 11-12 (2009)).

The Sixth Circuit has stated that trial counsel's obligation to investigate and present mitigation evidence applies in both capital and non-capital cases. *Id*. at 184 ("neither the Supreme Court nor our circuit has drawn a distinction between capital and non-capital cases

31

or the guilt and penalty stages of trial in applying the framework of *Strickland*."). However, "[t]he Supreme Court repeatedly has held that counsel is not ineffective for deciding to offer little or no mitigating evidence when that decision is based on sound professional judgment." *Carter v. Bradshaw*, No. 3:02CV00524, 2016 WL 1394059, at *2 (N.D. Ohio Apr. 8, 2016) (citing *Bell v. Cone*, 535 U.S. 685, 702 (2002); *Strickland*, 466 U.S. at 699-700; *Burger v. Kemp*, 483 U.S. 776, 793-75 (1987); *Darden v. Wainwright*, 477 U.S. 168, 184 (1986)). Moreover, *Strickland* "does not require defense counsel to investigate and present every possible type of mitigating evidence no matter how unlikely it would assist the defendant." *Minor v. United States*, No. 5:18CV1483, 2018 WL 4346154, at *3 (N.D. Ohio Sept. 11, 2020) (citing *Wiggins*, 539 U.S. at 533. "A strategic decision not to present mitigating evidence after a thorough investigation . . . is 'virtually unchallengeable.'" *Smith*, 735 F. App'x at 187.

> In rejecting Mr. Vinson's argument, the Eighth Appellate District held as follows:
>
> {¶ 37} " 'The presentation of mitigating evidence is a matter of trial strategy,' * * * even if counsel's chosen strategy proves unsuccessful." *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 304, quoting *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433, ¶ 189; *see also State v.* Otte, 8th Dist. Cuyahoga No. 84455, 2005-Ohio-100, 2005 WL 77071, ¶ 22, citing *State v. Keith*, 79 Ohio St.3d 514, 684 N.E.2d 47 (1997). Because there are "countless ways to provide effective assistance in any given case," judicial scrutiny of a lawyer's performance must be "highly deferential." *Strickland v. Washington*, 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674. " '[D]ecisions on strategy and trial tactics are granted wide latitude of professional judgment, *1040 and it is not the duty of a reviewing court to analyze trial counsel's legal tactics and maneuvers.' " *State v. Edgerson*, 8th Dist. Cuyahoga No. 101283, 2015-Ohio-593, 2015 WL 758992, ¶ 6, quoting *State v. Quinones*, 8th Dist. Cuyahoga No. 100928, 2014-Ohio-5544, 2014 WL 7186212, ¶ 18. A reviewing court, therefore, "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound * * * strategy.' " *Strickland* at 689, 104 S.Ct. 2052, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955).

{¶ 38} At the request of defense counsel, the trial court referred Vinson for a PSI and to the Court Psychiatric Clinic for a mitigation report. The mitigating factors identified by Vinson in his brief were before the court in the PSI and mitigation report, which defense counsel referenced during his argument at sentencing. Even if trial counsel had been deficient in his presentation of mitigation evidence—given that the mitigating factors identified in Vinson's brief were already before the court in the PSI and mitigation report—Vinson has not shown a reasonable probability that the outcome of his sentencing would have been different. Accordingly, Vinson's third assignment of error lacks merit and is overruled.

(ECF No. 6-1, Exhibit 13; *Vinson*, 73 N.E.3d at 1039-40).

Applying the double layer of deference under AEDPA, Mr. Vinson has not established that the trial court erred in rejecting his claim that his counsel was ineffective in failing to present additional mitigation evidence. Mr. Vinson's counsel expressly raised Mr. Vinson's mental health issues and drug use during the sentencing hearing. (ECF No. 6-2, PageID # 766-68). To the extent Mr. Vinson asserts that counsel should have presented additional information regarding those issues, counsel's failure to do so does not rise to the level of a *Strickland* violation. *See United States v. Brown*, No. 5:17-cr-233, 2022 WL 1136779, at *9 (N.D. Ohio Apr. 18, 2022) ("The Sixth Circuit has consistently held that the 'failure to present additional mitigating evidence that is "merely cumulative" of that already presented does not rise to the level of a constitutional violation.'") (quoting *Broom v. Mitchell*, 441 F.3d 392, 410 (6th Cir. 2006) (citing cases)); *Brinkley v. Houk*, 4:06 CV 0110, 2012 WL 1537661, at *12 (N.D. Ohio Apr. 30, 2012) ("The additional information about [petitioner's] upbringing contained in his family's post-conviction affidavits is largely cumulative to the mitigation testimony that was presented to the jury.").

Mr. Vinson argues that the Eighth Appellate District erred in stating that the remaining mitigation evidence was presented to the trial court in connection with his initial sentencing. The Warden disputes Mr. Vinson's assertion, but even if Mr. Vinson is correct, he cannot show that trial counsel's failure to present that evidence caused him prejudice because he

cannot show a likelihood that the trial court would have imposed a different sentence in light of additional mitigation evidence. To the contrary, Mr. Vinson presented that evidence in his motion to withdraw his guilty plea, arguing that he had experienced childhood abuse and neglect and had lost both his mother and his sister. (ECF No. 6-1, Exhibit 19). The trial court nonetheless denied Mr. Vinson's motion.

The trial court also reimposed a 99-year sentence after remand from the Eighth Appellate District, despite the fact that, by Mr. Vinson's own admission, he submitted a sentencing memorandum "point[ing] to his status as a youthful offender and a history of mental illness, childhood neglect, and trauma." (ECF No. 1-1, PageID # 18; *see also* ECF No. 6-1, Exhibit 48). In reimposing consecutive sentences, the trial court found that Mr. Vinson's offenses were "brutal," that they cost one victim his eye, and that Mr. Vinson failed to show the necessary remorse. (ECF No. 6-1, Exhibit 25). Thus, even assuming that trial counsel's performance fell below an objective standard of reasonableness in failing to initially present mitigation evidence regarding Mr. Vinson's upbringing, Mr. Vinson cannot show that he was prejudiced by any such error, and his ineffective assistance claim therefore fails.  *See Strickland*, 466 U.S. at 687 (holding that a defendant pursuing an ineffective assistance claim must demonstrate both deficient performance and prejudice); *Garcia Sanchez v. Philips*, No. 20-5205, 2020 WL 4875325, at *4 (6th Cir. July 14, 2020) (rejecting *Strickland* claim where petitioner failed to establish any likelihood that sentencing court would have been persuaded to impose a shorter sentence if counsel raised arguments petitioner alleged counsel improperly failed to raise); *Walker v. Warden, Chilicothe Corr. Inst*., No. 1:19-cv-233, 2020 WL 8458647, at *11 (S.D. Ohio Nov. 5, 2020), *report and recommendation adopted*, 2021 WL 415060 (S.D. Ohio Feb. 5, 2021) (holding that petitioner did not demonstrate prejudice for

purpose of *Strickland* claim where Ohio Court of Appeals "reasonably determined that counsel's failure to make mitigating arguments would not have altered the outcome of the sentencing"). I therefore recommend that the Court deny this portion of Mr. Vinson's third ground for relief as well.

## VI. RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A.  Legal Standard

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue

or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; see also 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)]."). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B.  Analysis

Mr. Vinson has not made a substantial showing of a denial of a constitutional right for the reasons set forth above. Because jurists of reason would not find these conclusions debatable, I recommend that no certificate of appealability issue in this case.

## VII. RECOMMENDATION

For the foregoing reasons, I RECOMMEND that the Court DENY Mr. Vinson's petition for a writ of habeas corpus under 28 U.S.C. § 2254.  I also recommend that the Court not grant him a certificate of appealability.

Dated:  June 7, 2024                    */s/Jennifer Dowdell Armstrong*
                                        Jennifer Dowdell Armstrong
                                        U.S. Magistrate Judge


### NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for

such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

Id. (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).